**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on December 03, 2008, which may be different from its entry on the record.**

**IT IS SO ORDERED.**



**Dated: December 03, 2008**

**Arthur I. Harris
United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re: ) | Case No. 07-17017 |
| ) | Chapter 7 |
| BRENDA J. HOLMES, ) | |
|     Debtor. ) | |
| ) | Adversary Proceeding |
| ) | No. 08-1159 |
| LAUREN A. HELBLING, ) | |
| TRUSTEE, ) | |
|     Plaintiff, ) | Judge Arthur I. Harris |
| ) | |
| v. ) | |
| ) | |
| BRENDA J. HOLMES, ) | |
|     Defendant. ) | |

MEMORANDUM OF OPINION[1]

This matter is currently before the Court on the trustee's complaint seeking revocation of discharge pursuant to 11 U.S.C. § 727(d)(1). For the following reasons the Court enters judgment in favor of the trustee revoking the debtor's discharge.

---

[1] This opinion is not intended for official publication.

## JURISDICTION

The Court has jurisdiction over this action. A claim for revocation of discharge pursuant to 11 U.S.C. § 727(d)(1) is a core proceeding under 28 U.S.C. §§ 157(b)(2)(J) and 1334, which falls within the jurisdiction granted to the court pursuant to Local General Order Number 84, dated July 16, 1984.

## FINDINGS OF FACT

Prior to trial the parties made the following stipulations of fact.

1. Brenda J. Holmes filed a chapter 7 bankruptcy proceeding in this Court on September 17, 2007. [Case # 07-17017]

2. Lauren A. Helbling is the trustee in this case.

3. On September 28, 2007, the Trustee sent a form letter to all debtors scheduled for hearing on October 22, 2007, requesting that the debtor bring to the hearing, among other items, his/her/their homeowner's insurance policy including all riders.

4. The Meeting of Creditors was held on October 22, 2007. At that time, Ms. Holmes testified, under oath, that her petition and schedules filed in this case were accurate and correct and contained all her assets and there were no changes required. The Trustee did not ask Ms. Holmes for a copy of her homeowner's insurance policy at the Meeting of Creditors.

5. The Trustee did not make inquiry regarding furs.

6. In her Schedule B, Item 7, titled "Furs and jewelry", Ms. Holmes indicated that she had "none."

7. Ms. Holmes filed a claim for loss of stolen property with her insurer,

2

Allstate, seeking recovery for loss of a fur coat. The subject coat was mahogany mink stroller purchased January 21, 2005. The coat was purchased, along with a headband, for the price of $4,618.99. The purchase was financed over a 36 month period. The first payment was due March 15, 2005, and the last payment was due February 15, 2008. The financing company was Great Lakes Financial, LLC.

8. Great Lakes Financial, LLC was not scheduled in Ms. Holmes's bankruptcy petition or schedules. However, Prime Acceptance Corp. was scheduled in the amount of $3,376 for credit card purchases made in 2006. Prime Acceptance Corp. appears to be the owner of the debt owed Great Lakes Financial, LLC.

9. Ms. Holmes reported the loss as a theft that occurred on November 17, 2007.

10. Ms. Holmes had the coat separately insured on her homeowner's insurance rider for a value of $15,000.

11. Ms. Holmes never notified her counsel or the Trustee that she owned a fur coat or that it had been stolen and an insurance claim and police report had been made by her. The Trustee learned of the fur coat from counsel for Allstate Insurance Company.

12. The police report was made by the Debtor on November 19, 2007.

13. The Debtor gave a sworn statement of loss to Allstate Insurance Company on January 10, 2008.

14. Ms. Holmes received her discharge on January 21, 2008.[2]

---

[2] The Court notes that stipulations 13 and 14 appear to have incorrect dates. According to plaintiff's exhibit 4, Ms. Holmes signed the sworn statement of loss on January 4, 2008, and, according to the docket, the debtor received her discharge on January 7, 2008. Although the Court does not believe these discrepencies to be significant, the Court finds that the sworn statement was signed on January 4,

3

15. Ms. Holmes received checks from the trustee representing her exempt and non-estate portions of her tax refund in April of 2008.

In addition to the stipulations, the Court finds the following facts.[3] On June 4, 2008, the plaintiff-trustee, Lauren Helbling, initiated this adversary proceeding (Adv. # 08-1159). The trustee alleges that the debtor violated 11 U.S.C. § 727(d)(1), and consequently seeks a revocation of discharge. Specifically, the trustee alleges that the debtor sought to conceal the existence of the fur coat from the trustee, and that if Allstate had not notified the trustee of the debtor's claim, the trustee would never have learned of the coat's existence. (Complaint, Dkt. #1). The trustee asserts that this omission constitutes a false oath, and contends that had the Court learned of this behavior prior to discharge, that the debtor would have been denied a discharge pursuant to 11 U.S.C §§ 727(a)(2)(B) and 727(a)(4). The trustee asserts that she learned of the fur coat

---

2008, and that the debtor received her discharge on January 7, 2008.

[3] The findings of fact contained in this memorandum of opinion reflect the Court's weighing of evidence, including consideration of the credibility of the witness. "In doing so, the court considered each witness's demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language, or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court has considered the testimony of the witness, as well as all exhibits admitted into evidence.

after the discharge had been issued.

Debtor claims that at the time she filed her Chapter 7 case she had forgotten about the coat, and testified at trial that she was under a great deal of stress throughout the time that her bankruptcy case was pending, both as a result of her finances and problems within her family.

On August 13, 2008, the Court granted the trustee's motion to compromise with the insurer of the fur coat (Dkt. # 37, case #07-17017). Under the compromise, the insurer paid the trustee $6,443.45, which Allstate contends is the value of the fur coat.

## CONCLUSIONS OF LAW

The Supreme Court has repeatedly stated that one of the chief aims of the bankruptcy code is to provide a "fresh start" for the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (*quoting Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)); *see also Marrama v. Citizens Bank*, 549 U.S. 365 (2007). The discharge lies at the center of the fresh start policy, and as such discharges are strongly favored. *See Yoppolo v. Sayre (In re Sayre)*, 321 B.R. 424, 426-27 (Bankr. N.D. Ohio 2004). Attempts to revoke a discharge must therefore be rooted clearly in the statute. *See Sayre,* 321 B.R. at 426; *see also Hunter v. Shoup (In re Shoup)*, 214 B.R. 166, 172 (Bankr. N.D. Ohio 1997). When

5

considering a motion for revocation of discharge, "§ 727(d) is liberally construed in favor of the debtor and strictly construed against the party seeking revocation." *Buckeye Retirement Co., L.L.C. v. Heil (In re Heil)*, 289 B.R. 897, 903 (Bankr. E.D. Tenn. 2003). The moving party must demonstrate by a "preponderance of the evidence" that the discharge should be revoked. *See, Sayre,* 321 B.R. at 427. Section 727 of the Bankruptcy Code provides in pertinent part:

> (d) On request of the trustee, a creditor, or the United States Trustee, and after notice and a hearing, the Court shall revoke a discharged granted under subsection (a) of this section if -
> (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of the such discharge.

Courts have interpreted this section as creating a two-part test. First, the plaintiff must demonstrate that the debtor obtained the discharge through fraud, and, second, that the moving party was unaware of the fraud before the discharge was granted. *See Sicherman v. Rivera (In re Rivera)*, 338 B.R. 318, 324 (Bankr. N.D. Ohio 2006); *see also Sayre*, 321 B.R. at 427; *Heil*, 289 B.R. at 903; *Humphreys v. Stedham (In re Stedham)*, 327 B.R. 889, 897 (Bankr. E.D. Tenn. 2005).

## I. FRAUD UNDER § 727(d)(1)

Under 11 U.S.C. § 727(d)(1) the moving party must demonstrate fraud in fact on the part of the debtor, as opposed to implied fraud or mistake of law. *See Heil,* 289 B.R. at 903; *see also Dobnicker v. Albers (In re Albers)*, 80 B.R. 414,

6

417 (Bankr. N.D. Ohio 1985); *U.S. Dept. of Labor v. Laporta (In re Laporta)*, 26 B.R. 687, 692 (Bankr. N.D. Ill. 1982). The plaintiff must show that had the Court been aware of the fraud prior to discharge, the discharge would have been denied under § 727(a). *See Heil*, 289 B.R. at 906; *Richardson v. McCollough, (In re McCullough)*, 259 B.R. 509, 521 (Bankr. D.R.I. 2001); *see also, White v. Nielsen (In re Nielsen)*, 383 F.3d 922, 925 (9th Cir. 2004); *Lawrence National Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991); *Sayre*, 321 B.R. at 427. Here, the trustee alleges that the debtor would have been denied a discharge under §§ 727(a)(2)(B) and 727(a)(4)(A).

### A. § 727(a)(2)(B) - Concealment of Property

To prevail under § 727(a)(2)(B) the moving party must establish that, "(1) the debtor transferred or concealed property, (2) such property constituted property of the estate, (3) the transfer or concealment occurred after the filing of the bankruptcy petition, and (4) the transfer or concealment was made with the intent to defraud the bankruptcy trustee." *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 156 (Bankr. N.D. Ohio 1998); *see also Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000) (creating an analogous two-part test for denial of discharge under § 727(a)(2)(A)). The minor differences between the four-part test in *Sowers* for actions under § 727(a)(2)(B) and the two-part test in

7

*Keeney* for actions under § 727(a)(2)(A) stem from the additional requirements of § 727(a)(2)(B) that the disposition be (1) of "property of the estate" and (2) "after the date of the filing of the petition" - *i.e.*, elements two and three of the four-part test in *Sowers*.

Here, only the first and fourth elements require detailed discussion; the other two are clearly met. The coat would have been a part of the bankruptcy estate; and based on the stipulated facts the alleged concealment continued after the petition, since the debtor failed to disclose the coat at the § 341 meeting of creditors. *See Sowers*, 229 B.R. at 157 (finding that omission of an asset at a § 341 meeting satisfies the postpetition requirement.); *see also Barber v. Herold (In re Herold)*, No. 07-81575, 2008 Bankr. Lexis 1799, at *8 (Bankr. C.D. Ill. 2008).

Courts have interpreted concealment under § 727(a)(2)(B) to mean "withholding knowledge of an asset by the failure or refusal to divulge owed information." *See Sowers,* 229 B.R. at 156; *see also Heil*, 383 B.R. at 654; *Fourmigue v. Seeber (In re Seeber)*, 2005 Bankr. Lexis 2964, 7 (Bankr. E.D. La. 2005); *see also*, *United States v. Wagner*, 382 F.3d 598, 609 (6th Cir. 2004) (adopting broad definition of concealment in affirming defendant's conviction for fraudulently concealing property from a bankruptcy trustee in violation of

8

18 U.S.C. § 152). Courts have found that a solitary omission is sufficient. *See Sowers,* 229 B.R. at 157 (failing to disclose an asset at the meeting of creditors was sufficient to meet the concealment element).

The concealment must take place after the filing of the petition. *See Sowers,* 229 B.R. at 156. Some courts have found that an omission from the bankruptcy schedules will meet this requirement. *See Sowers*, 229 B.R. at 156 (*citing Cobb v. Hadley (In re Hadley)*), 70 B.R. 51, 53 (Bankr. D. Kan. 1987).

The debtor did not disclose the fur coat in her bankruptcy schedules, at the meeting of creditors, or after the coat was stolen. The trustee only learned of the coat after Allstate contacted her. This is sufficient to satisfy the concealment element.

The final element of § 727(a)(2)(B) requires that the plaintiff demonstrate fraudulent intent on the part of the defendant. As stated above, the fraud in question must be fraud in fact, not constructive fraud. *See Sowers,* 229 B.R. at 157. Courts have held that fraudulent intent can be found where the defendant demonstrates "reckless disregard or indifference for the truth." *Heil*, 289 B.R. at 908; *see also Sayre*, 321 B.R. at 427. The Court may deduce such behavior from the facts and circumstances of the case. A pattern of omissions on the part of the debtor is often sufficient to find fraudulent intent, but an innocent mistake or error

9

will not suffice. *See Keeney,* 227 F.3d at 686; *see also Heil*, 289 B.R. at 908; *Olsen v. Slocombe (In re Slocombe)*, 344 B.R. 529, 536 (Bankr. W.D. Mich. 2006).

Here, the debtor did not disclose the fur coat in her bankruptcy schedules or at the § 341 meeting. After the coat was stolen, the debtor notified the police and Allstate of her loss, but did not notify the trustee. The debtor testified that when she filed for bankruptcy she had forgotten about the coat, which she stated had been hanging, unused, in her closet for several months. She further testified that she was distracted and under a great deal of pressure throughout her bankruptcy because of incidents involving her adopted children. The debtor also pointed out that at the meeting of creditors the trustee never specifically asked her about furs, and that while she did not disclose the fur under Schedule B there was a credit card charge from Prime Acceptance Corp. for $3,376.00 listed in Schedule F, which she said was related to the fur.

While the Court sympathizes with the debtor and her family, the Court finds by a preponderance of the evidence, that the debtor's failure to disclose the fur coat was not merely due to mistake or inadvertence. As the Sixth Circuit stated, " '[c]omplete financial disclosure' is a prerequisite to the privilege of discharge." *Keeney,* 227 F.3d at 685 *(quoting Peterson v. Scott (In re Scott),* 172 F.3d 959, 967 (7th Cir. 1999)). The Court finds it unlikely that the debtor inadvertently

10

overlooked the coat throughout the entirety of her bankruptcy case. She clearly knew that the coat was worth thousands of dollars since she had insured it for $15,000. Based on the schedules that the debtor filed with her bankruptcy petition, the coat appears to have been her most valuable personal possession. Indeed, according to the debtor's bankruptcy schedules her total personal property was worth $2,251.00, which meant that at the time she filed for bankruptcy the undisclosed fur coat was worth more than all of her other personal assets combined.

The bankruptcy schedules that the debtor filed contain detailed questions about her assets. Item 7, on Schedule B, specifically asks whether or not a debtor owns "furs and jewelry." Ms. Holmes marked none. This explicit question should have reminded the debtor of the fur coat. The unsecured claim listed in Schedule F, for $3,376.00 owed to Prime Acceptance did little to shed light on this omission, since it is described simply as a credit card debt.

The debtor emphasized that the trustee failed to ask her about furs at the § 341 meeting, but it is the debtor who bears the responsibility of ensuring that all assets have been disclosed. Additionally, before the § 341 meeting, the trustee sent a letter to the debtor directing her to bring several documents, including her homeowner's insurance policy and all attached riders. Nevertheless, when the

11

trustee asked the debtor at the § 341 meeting if she was aware of any changes that needed to be made to the schedules, Ms. Holmes said no.

After the coat was stolen, the debtor filed police and insurance reports, but did not inform the trustee or her lawyer. Even if the Court could accept that the debtor had not remembered the coat prior to this time, these reports show that she certainly thought of the coat after it was stolen. At this point, her bankruptcy case was ongoing, and there was no excuse for her failure to notify the trustee; however, Ms. Helbling only learned of the existence of the coat after Allstate contacted her several weeks later. Based on these facts, the Court can only assume that if Allstate had not contacted the trustee, the debtor would never have disclosed the coat or the insurance claim.

An individual who files for bankruptcy has an affirmative duty to fully and honestly disclose all assets. *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002). The Fifth Circuit explained that full disclosure of assets by the debtor is critical to the operation of the bankruptcy system because such information, "permits the court, the trustee, and the creditors to evaluate the debtor's financial condition at the date of the bankruptcy and ascertain what assets may be available for distribution to creditors." *Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 333 (5th Cir. 2004).

The debtor repeatedly failed to disclose the existence of the coat. At best, this conduct demonstrates a reckless disregard for the truth, which satisfies the standard for fraud. The Court finds that the trustee has met the requirements of § 727(a)(2)(B).

## B. § 727(a)(4)(A) - False Oath

Under § 727(d)(1) the moving party must show that the debtor obtained a discharge through fraud. The trustee has satisfied this requirement by demonstrating, by a preponderance of the evidence, that the debtor would have been denied a discharge under 727(a)(2)(B). As such, the Court does not need to address whether the debtor also would have been denied a discharge under § 727(a)(4)(A).

## II. TRUSTEE'S LACK OF KNOWLEDGE OF FRAUD

Under § 727(d)(1) the trustee must also show that she did not discover the fraud until after the Court granted the debtor's discharge. Here, the trustee alleges that she first learned of the coat when Allstate contacted her, which was after the Court had issued a discharge. The debtor has not contested this, and nothing in the facts causes the Court to question Ms. Helbling's assertion. The debtor filed a sworn statement of loss with Allstate in early January, and received her discharge several days later. Based on the proximity of these events, the Court concludes

13

that the trustee was not contacted by Allstate until after the debtor's discharge. Accordingly, the debtor's discharge is revoked under § 727(d)(1).[4]

## CONCLUSION

For the reasons stated above the Court enters judgment in favor of the trustee revoking the debtor's discharge. Each party shall bear its own costs and attorney's fees.

IT IS SO ORDERED.

---

[4] Although the trustee seeks the revocation *and denial* of the debtor's discharge, the Court believes that any order revoking a debtor's discharge under subsection 727(d) means the debtor's discharge is taken away without another chance to obtain a discharge in the case. This situation is to be distinguished from the situation in which a debtor's discharge is vacated and the debtor still has an opportunity to obtain a discharge in the case. *See In re Midkiff*, 342 F.3d 1194 (10th Cir. 2003) (Bankruptcy Rule 9024 authorizes Court to vacate discharge order separate and apart from revocation of discharge). As the Tenth Circuit noted in *Midkiff*, "Revocation of discharge has the same effect as a denial of discharge." 342 F.3d at 1199 (internal quotation marks omitted). Thus, in the context of subsection 727(d), the phrase "revocation and denial of discharge" is redundant.